May it please the court and counsel, good morning. My name is John Leder. I represent Appellant Mary Jo Keller. I'd like to reserve two minutes for rebuttal. As I was preparing for argument, I saw the calendar that the court provided earlier in the week, and there's a summary of the case that describes this as a car accident case, and I'd really like to impress on the panel that this case is about a lot more than that. This is about patent negligence at a high level by a federal government official that they later took steps to hide. Not only that, it was regarding a barrier that was installed, a necessary barrier for freeway safety that was installed on over 100 miles of freeways around Phoenix. That barrier has failed hundreds of times. There have been hundreds of accidents because the barrier failed. Many people have died. So this isn't just a car accident case. This is a case of high-level negligence that was concealed. There are material questions of fact regarding due diligence and regarding concealment, and the district court erred in granting summary judgment. There was enough evidence there. But this is really, it's also a statute of limitations. It's also a not timely filed question. Correct. Mr. Keller, at what point did you begin to represent Ms. Keller? Because one of the things the district judge has done is to say that, to attribute to her the knowledge that you had, at least as the district court says it, of this defect. Correct. Did you have that knowledge at a time that you were representing Ms. Keller in which there would have been an opportunity to do a timely filing? There is no evidence in the record when I represented Ms. Keller on this claim. I obviously represented... But do you know the answer? I actually haven't reviewed the file, Judge. So based on the record, the notice of claim, the federal notice of claim was served in December of 10. So it would have been no later than that. And there's no evidence in the record, and had Ms. Keller been deposed, that evidence would have been adduced. The statute of limitations is an affirmative defense. The United States bears the burden of proof on that affirmative defense. They could have deposed Ms. Keller. They didn't. There's no evidence in the record when my representation of her on this claim began. And you're representing to me that you do not know when you started to represent her? That's what I'm saying, Judge. I don't know when I began to represent her. So the latest it could have been would have been December 12, or of 10, rather. If the court would like me to supplement the record and answer that question, I'd be more than happy to do it. But I don't have an answer for the court, and I don't want to give you an answer that's not correct. But I think the court would agree that my knowledge that I had before I represented Mrs. Keller on this claim is not attributable to her. And that's the primary legal flaw in the district court's analysis. This court in Pearl, the Third Circuit in Maldonado, and the Seventh Circuit in Schultz. But if you did have that knowledge, and you were representing her at a time in which a defect was filed, there's a problem. It may be a different problem from whether it can be attributed to her statute of limitations, but it may be a problem that you did not properly represent her. I don't understand what that problem would be, Your Honor. Well, if you knew that there was a defect, you represented her, and the defect was the issue, and you failed to do timely filing, there's a problem. Well, the defect was also an issue in the state court litigation, and there's shared responsibility for this defect between the state and the federal government. But if my knowledge isn't attributable to Mrs. Keller, which it's not, then the analysis of her due diligence needs to be based on the evidence in the record. And the evidence in the record is that she timely pursued her claims against the state of Arizona, against Aztec Engineering, and there's no reason to believe that she wouldn't have pursued a claim against the United States had she known it. Can you explain, I mean, to establish fraudulent concealment as a basis for tolling, you need to show not just that the government knew and didn't tell anybody, but that they took some affirmative, wrongful steps to cover up what they knew. What specifically are you alleging that they did? The government issued a memorandum that was signed by John Baxter, who was a high-ranking FHWA official. It was actually written by Richard Powers, who was just below him. And the memo, taken in a light most favorable to the plaintiff, the appellant, says that this barrier, this design, was crash-tested. It wasn't. And they knew it wasn't crash-tested. It's the September 12, 2005 FHWM memo that says, the subject design may be considered crash-worthy under TL3. TL3 refers to NCHRP Report 15. Crash-worthy isn't the same thing as crash-tested. So, it's not required that every design be crash-tested. If someone with expertise, some engineering expertise, has four strands versus three strands, it's a different color, I don't know. Not every barrier has to be crash-tested. Judge Pregerson, Congress adopted NCHRP Report 350 as a standard in 1993. Does that mean every barrier has to be crash-tested? It does, Your Honor, because Report 350 has two requirements. It has a crash-test requirement, and it has an in-service evaluation requirement. Congress adopted 350. 350 has two requirements, and one of those requirements is a crash-test. There's no discretion at all by someone in the government to say, these are essentially the same thing. We're not going to crash-test every variation, every slight improvement, every other issue that comes up. That doesn't exist. I don't believe there's discretion to disregard Report 350 because Congress passed it as the crash-test standard. If you're right about that, that would suggest that the author of the memo, I guess Mr. Baxter, was wrong when he wrote the memo and should not have written the memo. I don't see how it's fraudulent concealment of anything. If the memo can fairly be read to say that the barrier was crash-tested, and in fact it wasn't, I don't see how that's not at least, how it doesn't at least create a question of fact on concealment. And I think it's important that the facts regarding concealment in this case are exactly the same facts that the plaintiff in the June case presented to the U.S. Supreme Court. And the U.S. Supreme Court said, there's enough here to send it back to the district court to evaluate. And that was, but you, I mean, going back to the question of what you as Ms. Keller's attorney knew, even if we don't think that the knowledge you acquired in representing a different client is imputable to her, if you knew about it, I mean, doesn't that at least mean that it wasn't very effectively concealed? No. In fact, it was very effectively concealed. I didn't learn about it until April of 2009, which was many years after the state court litigation began. There were Freedom of Information Act requests. There were testimony requests. And when did the statute, when did the two-year period run out on Ms. Keller's client? Two years from the date of the Keller death would have been September 7th of 2009. Long before that. There was, and it's relevant also to due diligence, which is that what else could Ms. Keller have done? Presumably, she could have done a Freedom of Information Act request. Well, others tried that and nothing came of it. Could you review the dates again for me? At what point did you learn of the problem and at what date did the statute run for Ms. Keller? I learned of the government's negligence in April of 2009, late April 2009, at a deposition of Mr. Powers in Washington, D.C. And Amy Keller died September 7th of 2007, so the two years from that date would be September 7th of 2009. But again, whatever knowledge I had at that time isn't attributable to Mrs. Keller. It isn't. And you don't, and at what point did she file? She filed her, within two years of April 2009. She served her claim notice. She presented her claim notice to the FHWA December, I think, 16th of 2010. So, within two years of the date that anyone could have known of this negligence ... I'm sorry. Give me the date again of which she filed. I believe it was December 16th of 2010 was the date that she did her administrative claim and the district court lawsuit was filed within six months of the formal denial. So, she did serve the administrative claim within two years of the date anybody could have known of this negligence that we maintain based on this record was concealed. Or at least, there surely has to be a question of fact whether it was concealed. And I think that's what the Supreme Court said in June. They looked at the same evidence and they specifically said we're sending it back to the district court for a determination whether this was concealment. Booth and June were later decided on other grounds. And this court has never had the opportunity to address whether the concealment facts presented here are adequate for purposes of equitable tolling. Can I ask a question? So, just to sort of go back to basics, this terrible accident happens. This barricade fails. Everybody knows that it failed. That's not a secret. Correct. Okay. So, at that point, just putting on my scale, whether it says in a federal report that it's been tested or not tested, how does that answer the question of whether you should file a claim under the Federal Tort Claims Act based upon a defective design? Why is your case connected, and maybe I'm missing something, to a possible concealment when isn't the fundamental issue how it failed, why it failed? And, you know, there's no evidence that you were given a false scent or anything else because of this report, because it seems pretty fundamental to me that you would want to know why it failed on your own. Because even if the report indicated appropriately that it had crashed tested, does that give the government necessarily immunity from a defective design? Yeah, and I'll do my best to answer Your Honor's question. So, through the state court litigation, the common belief was that the state of Arizona misled the federal government and said that the barrier had been crash tested. We have the funding documents that the Arizona Department of Transportation submitted to the FHWA, and those documents say the barrier was funded. The first deposition I took in the other matter was a woman named Jennifer Brown, who works for the FHWA in Phoenix. She thought, she testified that she thought the state had misrepresented the crash test issue to her. It wasn't until I went above her to the FHWA high-ranking people in D.C. that the truth came out. So, the point is, the reason it wasn't crash tested was because of this Mr. Power. And, Judge, it's important, it failed because it was a bad design. It had been a bad design. Presumably, the crash testing would have indicated that. And there are a number of wonderful proprietary systems, the Bryphon system, the CAST system. These are extremely effective median cable barriers. So, the crash test But wouldn't you still have to prove it was a bad design? Your Honor, this design has worked. Yes, we would. And even the evidence in the record now before the Court proves that it's a bad design. This barrier, as of 2004, had worked 50 percent of the time, and that was based on a study commissioned by the State of Arizona. How does that help you, though? The fact that it It seemed to me that you were on notice that this was a bad design. It was a bad design, Judge. But the point is, no one had any reason to believe until April of 2009 that the Feds had anything to do with it. It was the State's design, and the State representative had been crash tested. There was no reason for anyone to believe until April of 2009 that the Feds played a role here and had responsibility, and they were negligent. I go to pose Mr. Powers, and he says, I screwed up. I relied on the wrong set of crash test reports. I relied on one set of crash test reports. I see. You weren't even focused on a Federal component. No, sir. I see. So, I'm reserving two minutes for rebuttal unless the Court has any additional questions. Let's hear from the other side, and then you can respond. Thank you, Judge. Good morning. May it please the Court? Rachel Hernandez on behalf of the United States. The defendant's claim accrued on the day of the accident. She unreasonably waited more than a year past the statute of limitations to file her administrative claim, and equitable tolling is not justified here because they neither acted with due diligence, nor have they established extraordinary circumstances. I'd like to jump into the due diligence portion first and point out a few things on dates. The accident happened on September 7, 2007. I don't know when counsel began representing her, but we do know that she filed a State case arising out of the same accident with the same attorney in June of 2008. In September of 2008... In other words, Mr. Leder was representing her at a time when she could have timely filed. Yes, of course. Right. The accident was September 07. The State case was June of 08. In September of 08, so one year after her accident, he filed an administrative claim in the Melvin case on the same grounds. That's important to note because this deposition where he claims to have learned of this discrepancy in the Baxter, this claim discrepancy in the Baxter memo was in the Melvin case. That deposition occurred in furtherance of the Melvin case. That gets us back to the agency questions. Of course, in taking a client, an attorney has a duty to conduct a conflict analysis. Why? Because an attorney has a responsibility to impart what he learns in cases to his client's benefit. Mr. Leder, as far back as November of 2006, wrote a letter saying a key issue in these cases is whether the FHWA, as of late 1999, had deemed this design to be 350 compliant or approved for its use on the national highway system. As far back as 2006, it was at least known that there were issues with the FHWA. I think here on the due diligence issue, it's an added bonus that Mr. Leder knew and makes, I think, a higher hurdle. I will say this is a case that occurred on part of the national highway system. At the moment where her car was not stopped by the barrier and this became a highway defect case as opposed to an exploding gas tank case or some other tragedy, a reasonable person would look to the federal government's involvement in it. I think it might be something you could Google. Who's responsible for approving barriers? Who constructs barriers? To say that she acted with due diligence here, I just think, is not sustainable. And when you add to that the fact that Mr. Leder himself had the knowledge and probably had a duty to impart it to his client, I don't think... Yeah, there may be another lawsuit lurking behind this one. There may be. However, I just don't think they can meet the due diligence prong. And you look at... And then as you all have raised already, when you look at the extraordinary circumstance prong, the fraudulent concealment, it wasn't very well concealed. As I said, he's got letters to 2007. Taking aside from the fact that he was the attorney, an attorney in the community knew that this was an issue. The state was saying it was the Fed's fault. It wasn't concealed. There's nothing in the Baxter memo. The Cooper case is clear on this point. The fact that... I'm sorry. Can you tell us more about both the date and the circumstances of the state's claim, that this was federal negligence? Yes. So in December of 2007, keeping in mind the accident occurred in September of 2007, in December of 2007, counsel filed the Melvin administrative claim. In that administrative claim, he said, the state makes several claims that the FHWA has endorsed the subject design and that the state relied on these alleged endorsements. If the state's allegations are true, the United States is partially at fault for the functionally inadequate barrier that was present and is present on many state roadways. And the state had made those allegations in... That was in the Melvin... In the Melvin litigation. I believe that was in the Melvin litigation. And so there was nothing concealed. There was not due diligence. Both prongs need to be met. He's met neither, or rather plaintiff has met neither. And so we would ask that you affirm. Thank you. When the statute is told, it stops running. So if the statute was told based on concealment that occurred in 2005, it is not running. It did not... The problem may be that you knew very well that the United States was a possible defendant, and you knew it at a time when, while you represented Ms. Keller or the Keller family, you could have timely filed, and you didn't do it. That is true, Your Honor, and... Sounds like there's a possible difficulty between you and your client on this point. And there may be, Judge, but that's not the issue before this court. I understand that, but there may be another lawsuit coming. Well, Judge, certainly that is a different issue for a different day, but I think we all agree that whatever knowledge I had isn't attributable to Mrs. Keller, but... I don't think we all agree with that. I mean, that's one of the questions of dispute in the case. So the point is, if it was told, Your Honor, then the statute doesn't... The clock doesn't start to run again until April of 2009. And if it starts to run in April 2009, because that's when the concealment ends, then this notice of claim was timely filed. And that's the position in the case. The grounds that were alleged in the Melvin claim notice were not the grounds that this lawsuit's based on, because when the Melvin claim notice was submitted, Mr. Powers hadn't been deposed yet, and the negligence wasn't on. The state made a number of allegations in the cases, in the state court cases, but they never designated the federal government as a non-party at fault. The state of Arizona never blamed the federal government in any of the state court litigation. So to say that the state did is simply wrong. The state never blamed the federal government. And had the state done so, the way things played out may very well have been different. But they didn't do that, and it's inaccurate to say that they did. Unless the court has any additional questions, I have nothing further. Okay. Thank you. Thank you very much. Thank both sides for their helpful arguments. Keller v. United States is now submitted. Thank the students for their patience. You saw a long day, but you saw a day that's actually fairly typical. This is what we do. So thank you for coming, and we're in adjournment.
judges: W. Fletcher, Miller, Pregerson